**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| WILLIAM F. GARDNER, JR., | ) CASE NO. 1:25-cv-01410-CEH |
| | ) |
| Plaintiff, | ) CARMEN E. HENDERSON |
| | ) UNITED STATES MAGISTRATE JUDGE |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY | ) **MEMORANDUM OPINION AND ORDER** |
| ADMINISTRATION | ) |
| | ) |
| Defendant, | ) |

**I. Introduction**

Plaintiff, William F. Gardner ("Gardner" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and OVERRULES Plaintiff's Statement of Errors.

**II. Procedural History**

On November 11, 2022, Claimant filed applications for DIB and SSI, alleging a disability onset date of August 16, 2022, and claiming he was disabled due to toe amputation, lumbar spine injury, shoulder injury, tingling and numbness in left hand/arm, and anxiety. (ECF No. 7, PageID # 205–225). The applications were denied initially and upon reconsideration, Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 7, PageID #: 128–148). On February 7, 2024, an ALJ held a hearing, during which Gardner, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 64–86). On March 27, 2024, the ALJ

1

issued a written decision finding Claimant was not disabled. (ECF No. 7, PageID # 46–59). The ALJ's decision became final on May 9, 2025, when the Appeals Council declined further review. (ECF No. 7, PageID #: 34).

On July 7, 2025, Claimant filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, at 11,12). Claimant asserts the following assignment of error:

> Whether the ALJ reversibly erred in evaluating Gardner's symptom severity and by failing to build a logical bridge between the evidence and the ALJ's failure to find essentially any standing or walking limitation whatsoever in his RFC determination.

(ECF No. 9 at 1).

**III. Background[1]**

**A. Relevant Hearing Testimony**

The ALJ summarized the relevant testimony from Claimant's hearing:

> [Claimant] alleged difficulty with walking and balancing due to losing his toe, has chronic pain, no balance even when using a cane, is always dizzy due to diabetes, and medication dosage increased due to worsening anxiety (Ex. 5E/2, 5, 8E/2). He also alleged he is unable to complete activities of daily living without assistance from his ex-wife, has impaired balance and ability to walk, requires a cane for balance and ambulation and even with an assistive device, walking and balance are not corrected, cannot ambulate or balance safely, and is a fall risk (Ex. 8E/4). Side effects from medications and chronic pain also impair ability to complete activities of daily living.
>
> The claimant reported conditions limit his ability to work because he is in a lot of pain from back and shoulder, has anxiety from losing his big toe due to amputation after being burned, and is learning how to walk again (Ex. 4E). He reported his no longer able to play sports, can walk five minutes before needing to stop and rest for 10 minutes, and has difficulty with lifting, squatting, bending, standing, reaching, sitting, kneeling, stair climbing, walking, memory, completing tasks, concentration, understanding, and following instructions.
>
> The claimant testified he has been using a prescribed cane full time since his toe

---

[1] Gardner's appeal relates to opinions regarding his physical impairments. Because he did not challenge anything regarding his mental impairments, the Court's discussion will relate to his physical impairment records only.

> amputation and is unable to lift anything due to degenerative disc disease in his back and left shoulder arthritis (Hearing Record, February 7, 2024). He stated he used to go to physical therapy, but it did not work and has a prescription for medication that provides partial relief. He had rotator cup [sic] surgery that healed but is not the same and does not want to have back surgery. He also developed hammer toes due to the toe amputation, now has no balance, and is diabetic. He testified he can stand in one place a maximum of one hour then has to sit, has difficulty with walking and standing, sitting is hard so laying down helps and is constantly up and down, cannot lift due to his back but can hold a cell phone, cannot reach, kneel, crawl, or crouch, and has problems with lack of feeling, toes curling, and pain in feet rated an 8/10 and 5/10 with medication.

(ECF No. 7, PageID #: 53).

**B. Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

> The claimant was involved in a work-related injury that did not heal properly and underwent amputation of the right big toe on October 12, 2022 (Ex. 2F/10-43, 6F/10). Additionally, the claimant has a history of right shoulder rotator cuff surgery in 2017, current rotator cuff syndrome of the left shoulder, diabetes mellitus type 2 and was diagnosed with diabetic retinopathy of both eyes without macular edema (Ex. 1F/247, 251, 2F/11, 6F/10, 7F/9, 8F/3, 13F/4, 29). Updated x-ray testing of the lumbar spine dated December 7, 2023 showed mild to moderate dextroscoliosis of the thoracolumbar spine, 3mm retrolisthesis of L3 on L4 and 2mm retrolisthesis of L4 on L5, L3-4, L4-5, and L5-S1 degenerative disc disease and moderate lumbar endplate spondylosis (Ex. 13F/8). The claimant's treatment plan has generally consisted of routine outpatient follow-up, instruction on importance of regular A1c and glucose testing and good blood pressure control, medication refills with some adjustments as needed, and injections for diabetes (Ex. 6F/10, 7F/10 10F/9, 11F/9, 12F/6-7, 13F/27, 56, 61).

> The claimant presented to outpatient visits typically unaccompanied and reported to experience some lightheadedness, dizziness, and foot pain but otherwise felt well and blood sugar was improving with medication (Ex. 7F/9, 9F/9, 13, 11F/7, 12F/5, 13F/27, 33, 59). Examinations were unremarkable with normal heart rate and rhythm, pulses, heart sounds, pulmonary effort, and breath sounds (Ex. 7F/10, 9F/10, 14, 11F/9, 12F/6, 13F/35, 38, 44, 60-61). He was ambulatory without an assistive device and showed steady gait (Ex. 13F/25, 27, 33, 35). The claimant also noted to be alert and oriented with normal mood and affect (Ex. 9F/15, 13F/27, 29, 35, 56).

> In addition, the claimant complained of right shoulder pain and left shoulder pain, moderate in severity, aggravated by motion, activity, and overhead lifting, and alleviated by rest (Ex. 13F/21, 29). He noted to be right-hand dominant. He

3

> exhibited no gait instability and showed good air exchange, no upper extremity edema or varicosities, bilateral eye EOM intact, no rashes or lesions, pain in the affected extremity but grossly intact coordination (Ex. 13F/29). Left arm/shoulder examination indicated tenderness about the anterior shoulder/supraspinatus and bicipital groove, no joint instability or swelling, no clinical deformity or atrophy, limited motion in forward flexion and abduction, sensation intact to light touch, negative cervical lever/grind test, positive supraspinatus/impingement and abdominal compression, and negative liftoff, AC shear, and apprehension (Ex. 13F/29). X-ray of the left shoulder showed mild glenohumeral joint degenerative change, mild degenerative changes at the acromioclavicular joint, and subcentimeter lucency in the left proximal humeral diaphysis of uncertain etiology and clinical significance and no fracture or abnormal calcifications (Ex. 13F/21, 28). The claimant received a steroid injection and subsequently reported feeling much better (Ex. 13F/21, 30).
>
> During a consultative evaluation in March 2023, the examiner observed the claimant to ambulate with a cane due to losing his right great toe to amputation (Ex. 8F/5). He reported that he had fallen and worried it could happen again, so the cane helped with balance (Ex. 8F/5). The examiner noted posture, gait, and motor behavior were otherwise normal, and the claimant exhibited no involuntary movements. He reported he cooks and cleans once a week but cannot stand long enough to do shopping or laundry, and showers and changes clothes daily.
>
> During an examination in September 2023 the claimant reported swelling and pain to the right lower leg and ankle that had been going on for about two months and had driven to Florida in July and in August was cutting grass and felt a pop (Ex. 13F/54). He demonstrated antalgic gait and right lower leg with edema, erythema, and warmth, but no left lower leg edema or abnormalities and no assistive device (Ex. 13F/55-56). During a follow-up appointment in December 2023, the claimant noted to be wearing a cast boot since September 2023 due to a right Achilles tendon rupture (Ex. 13F/2, 52). He reported he removed the boot to drive. He described some pain in the back of his calf at the rupture site, some weakness in the area, and numbness in feet. Blood sugars have been improving. Foot examination indicated structurally normal limits, right hallux toe amputation, +5/5 muscle strength dorsiflexion and 3/5 strength plantarflexion, inversion, eversion left foot and decreased plantarflexion right foot, decreased range of motion 1st MTPJ bilaterally, decreased range of motion MTJ/STJ without pain or crepitus bilaterally, decreased ankle joint range of motion bilaterally, rectus arch presented right with hammertoe contractures 2, 3, 4, 5, and pain to palpation of the proximal end of the right Achilles tendon (Ex. 13F/6). X-ray testing of the right tibia and ankle were unremarkable and showed no acute fracture, dislocation, joint effusion, or other abnormality (Ex. 13F/10-11).
> The claimant's treatment plan consisted of wearing a brace with custom orthotic.

(ECF No. 7, PageID #: 54–55).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: other disorders of the skin and subcutaneous tissues, amputation due to any cause (right big toe); left shoulder rotator cuff syndrome and prior right shoulder rotator cuff surgery; lumbar spine degenerative disc disease; and diabetes mellitus type II with retinopathy (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, or crawl; occasionally reach overhead bilaterally; and must avoid all exposure to hazards, such as unprotected heights, moving machinery, and commercial driving.

6. The claimant is capable of performing past relevant work as an Automobile Salesperson and Parking Lot Attendant. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 16, 2022, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(ECF No. 7, PageID #: 49–50, 52, 57, 59).

### V. Law & Analysis

#### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529

(6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Gardener raises the following assignment of error on appeal:

> Whether the ALJ reversibly erred in evaluating Gardner's symptom severity and by failing to build a logical bridge between the evidence and the ALJ's failure to find essentially any standing or walking limitation whatsoever in his RFC determination.

(ECF No. 9, at 1). To support this argument, Gardner asserts that the ALJ's analysis summarized the medical evidence and provided "a generic boilerplate symptom severity analysis" when concluding the Claimant's allegations of functional limitations are not consistent with the evidence of record. (ECF No. 9, at 8). Claimant also takes the position that much of the evidence summarized by the ALJ does not support an RFC of light exertion work. *Id.*

However, the Commissioner argues that substantial evidence supports the ALJ's RFC. Specifically, Commissioner noted,

> [t]he ALJ considered Plaintiff's hearing testimony, statements to the agency, the objective medical evidence, and reasonably concluded that, while he had functional limitations, Plaintiff failed to show that his symptoms were of the severity to preclude light work given that he was ambulatory without an assistive device and had a steady gait.

(ECF No. 11, at 6). Finally, The Commissioner concludes that the ALJ provided an adequate explanation of his consideration of Claimant's subjective complaints. *Id.*

The evaluation of a Claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information

7

provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2016 SSR LEXIS 4, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.: see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 U.S. Dist. LEXIS 102150, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248–49), *report & recommendation adopted*, 2019 U.S. Dist. LEXIS 133701, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, after summarizing the medical records, the ALJ provided the following explanation of his consideration of Claimant's symptom testimony:

> The claimant's allegations of disabling functional limitations are not entirely consistent with the evidence of record. The claimant's impairments could

8

reasonably be expected to produce the alleged symptoms, but the intensity of the symptoms and impact on functioning are not consistent with the totality of the evidence. The medical record does not establish functional limitations that would preclude the restrictions stated above. Despite allegations of limitations, the claimant has generally maintained intact system functioning as demonstrated during examinations. The record of evidence also demonstrated symptoms were stable and improved with a generally conservative course of treatment. In sum, the claimant's alleged functional limitations are not entirely consistent with the claimant's reported daily functioning, the examination findings of record, and the persuasive portions of the medical opinions. Nonetheless, the above evidence supports that the claimant has experienced the degree of limitation reflected in the residual functional capacity assessment above and discussed above. Accordingly, the undersigned finds the record does not establish limitations that would preclude work activity within the residual functional capacity defined in this decision.

(ECF No. 7, PageID #: 55).

This discussion shows that the ALJ properly considered Claimant's symptom allegations in accordance with SSR 16-3p, 2016 SSR LEXIS 4. The ALJ built a logical bridge between the objective medical evidence and his conclusion that the evidence did not support the severity of Claimant's allegations due to the lack of objective evidence showing, standing or walking limitations, difficulty with balance, ambulation, or coordination, leg numbness, and unstable gait. (ECF No. 7, at PageID #: 1111, 1113, 1119, 1121 (ambulatory without an assistive device and showed steady gait); 1115 (exhibit[ing] no gait instability… [and] pain in the affected extremity but grossly intact coordination); 1016 (examiner noted posture, gait, and motor behavior were normal); 1016-1017 (x-ray testing of the right tibia and ankle were unremarkable and showed no acute fracture, dislocation, joint effusion, or other abnormality)).

Additionally, in his decision, the ALJ discussed Claimant's ability to cut grass, drive to Florida, cook and clean once a week, but inability to stand long enough to do shopping or laundry, and shower and change clothes daily. (*Id.* at PageID #: 55). The ALJ also relied on the State agency consultants' opinions which opined, "the claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour workday,

9

sit about six hours in an eight-hour workday, and occasionally stoop." (*Id.* at PageID #: 56). Therefore, the ALJ properly considered Gardner's subjective symptoms. Thus, substantial evidence supports the ALJ's conclusion, and the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Turning to the RFC, in determining the adequacy of the ALJ's RFC determination, a reviewing court must focus on the explanation given by the ALJ's decision without finding further support in the records not specifically included in the decision. *See Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 764 (N.D. Ohio 2019) ("In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence de novo, make credibility determinations, or weigh the evidence"). Prior to determining that Gardner could perform light exertional work at Step Four, the ALJ determined Gardner's RFC. (ECF No. 7, PageID #: 52). The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). The ALJ formulated an RFC determining that Gardner had the ability to, "… perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, or crawl; occasionally reach overhead bilaterally; and must avoid all exposure to hazards, such as unprotected heights, moving machinery, and commercial driving." (ECF No. 7, PageID #: 52). In formulating the RFC, the ALJ considered medical and non-medical evidence, including Claimant's self-described limitations, as required by 20 C.F.R. § 404.1545(a)(3) building a logical bridge between the evidence, including Claimant's treatment records and medical opinions, and his conclusions. (ECF No. 7, PageID #: 52–57); *see*

20 C.F.R. § 404.1545(a)(3).

Moreover, in formulating the RFC, the ALJ considered State agency physical consultants' opinions. (ECF No. 7, PageID #: 56). Courts in this Circuit find that State agency physical consultants' opinions may constitute substantial evidence supporting an ALJ's decision. *See Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue,* 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."*); see also Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.")*.* In the instant case, the consultants concluded that Claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and occasionally stoop and the ALJ considered their opinions. (ECF No. 7, at PageID #: 56).

However, the ALJ found the state agency physicians opinions less persuasive because the record "supports additional climbing and postural activities, overhead reach, and hazard limitations due to combined impairments and associated concerns, including due to balance, falling, lightheadedness, dizziness, and left shoulder limited range of motion and positive clinical findings." (ECF No. 7, at PageID #: 56, 588, 1005, 1016, 1028, 1032, 1115). Thus, the ALJ formulated an RFC more limited than the state agency physicians' opinions. In sum, the ALJ did not err in his evaluation of Gardner's symptom severity and built a logical bridge between the evidence and the ALJ's RFC.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: February 9, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE